Eastern District of Kentucky
F I L E D
OCT 2 0 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-618-GWU

RACHEL KENNEDY,           PLAINTIFF,

VS.        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,     DEFENDANT.

\* \* \* \* \* \* \* \*

The plaintiff, Rachel Kennedy, appeals an administrative decision to terminate Supplemental Security Income (SSI) benefits originally awarded in 1995. The case is currently before the Court on cross-motions for summary judgment.

**STANDARDS APPLICABLE TO TERMINATION DECISIONS**

Once an individual is awarded benefits, his or her continued eligibility for such benefits is subject to the following review:

1. Is the beneficiary engaging in substantial gainful activity? If so, then the disability will be found to have ended. See 20 C.F.R. Section 404.1594(f)(1), 416.994(f).

2. Provided the beneficiary is not engaged in substantial gainful activity, does the beneficiary have an impairment or combination of impairments which meet or equal the severity of impairments in the Listing? If so, then the disability must be found to continue. See 20 C.F.R. Section 404.1594(f)(2), 416.994(f).

1

Kennedy

3. If a Listing is not met, has there been medical improvement in the plaintiff's original conditions? That is, any decrease in the medical severity of the impairments present at the time of the most favorable medical decision that you were disabled or continued to be disabled. 20 C.F.R. 404.1594(b)(1)), 416.994(b).

4. Provided medical improvement has occurred, then the question is whether this has produced an increase in the residual functional capacity. If the improvement is not related to the ability to perform work activities, then one proceeds to step 5. If the improvement is related to work ability, then one proceeds to step 6. See 20 C.F.R. Section 404.1594(c), 416.994(c).

5. Provided there has been no medical improvement or the improvement is not related to work ability, then one must decide whether an exception to the medical improvement standard will apply. If not, then a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(d) and (e), 416.994(d) and (e).

6. If the medical improvement is found to be related to work ability or if an exception to the medical improvement standard applies, then one considers whether the current impairments in combination are "severe." If so, then one proceeds to step 7; if not, the beneficiary is no longer considered disabled. See 20 C.F.R. Section 404.1594(f)(6), 416.994(f).

7. If the impairments are found to be severe, then one must assess the beneficiary's ability to engage in substantial gainful activity in accordance with 20 C.F.R. Section 404.1561. If found capable of performing past relevant work, then the disability will be found to have ended. Otherwise, one proceeds to step 8. See 20 C.F.R. Section 404.1594(f) (7), 416.994(f).

8. Provided the beneficiary cannot perform past relevant work, then one must assess the residual functional capacity and considering the age, education, and past work experience, determine whether other work can be performed. If so, then the beneficiary is no longer disabled. Otherwise, a finding of continuing disability should be made. See 20 C.F.R. Section 404.1594(f)(8), 416.994(f).

The standard for judicial review is whether there is substantial evidence to

support the Secretary's decision that the plaintiff's condition has improved to the extent that he can perform substantial gainful activity. Casiano, Jr. v. Heckler, 746 F. 2d 1144 (6th Cir. 1984). The Court must determine from the record upon what conditions the claimant was awarded benefits, and whether there has been any improvement in these conditions. Id. at 1148.

## DISCUSSION

The plaintiff had been determined to be disabled in an initial level determination in March, 1995, with an onset date of September 1, 1994 and, at that time, was said to have a primary diagnosis of "affective (mood) disorders" and a secondary diagnosis of "obesity." (Tr. 41). Upon review in 2003, a state agency reviewing psychologist, Dr. Ilze Sillers, opined that the plaintiff's level of depression had improved (Tr. 68-70, 87), and a state agency reviewing physician, Dr. C. Hernandez, indicated that the plaintiff did not have a "severe" physical impairment and that her disability had ceased as of May 1, 2003 (Tr. 67, 86). The plaintiff appealed to an Administrative Law Judge (ALJ), who reviewed the evidence and determined that Mrs. Kennedy had current "severe" impairments including new onset diabetes controlled with medication, hypertension controlled with medication, obesity, recurrent upper respiratory and gastrointestinal conditions, a dysthymic disorder, and dependent personality traits. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Kennedy possessed the residual functional capacity to perform a significant number of jobs

3

existing in the economy, and that she had not been under a disability since May 1, 2003. (Tr. 22-6).[1]

No physician other than Dr. Hernandez expressed an opinion regarding the plaintiff's current functional capacity. The plaintiff sought treatment for a variety of conditions from her family physician, Dr. Sherrill Roberts, and received medication for gastroesophageal reflux disease, for weight loss, for hypertension, for complaints of depression, for transient sinus infections and bronchitis, and most recently for new onset diabetes. (Tr. 230-44, 309-12, 316-24). Dr. Roberts never provided any functional restrictions, however. A doctor of optometry, James Sawyer, indicated that he treated the plaintiff on several occasions in 2002 for "recurrent corneal erosion," but she retained corrected visual acuity of 20/20 in the right eye and 20/25 in the left eye. (Tr. 272-3). There was no consultative physical examination. Therefore, the opinion of Dr. Hernandez as to the current severity of the plaintiff's physical impairments is uncontradicted.

As far as the psychological condition was concerned, Dr. Sillers found that the plaintiff's indications of major depression in 1995, which included a sad/blunted affect, depression, social isolation, and restricted activities of daily living per the

---

[1] The ALJ had asked the VE whether a person of the plaintiff's age, education and work experience could perform any jobs if she had no physical limitations and a "limited but satisfactory" ability to withstand work stresses. (Tr. 346). The VE responded in the affirmative, and proceeded to name them and give the numbers in which they existed in the state and national economies. (Tr. 346-7).

Kennedy

February 16, 1995 evaluation of Dr. Bob Winston (Tr. 196-201), had improved, based on the March 18, 2003 evaluation of Dr. Gary Maryman, a psychologist (Tr. 224-7). Dr. Maryman diagnosed dysthymia rather than major depression, and noted that the plaintiff made good eye contact and showed no signs of anxiety, timidity, or depression, despite her claims that she was usually unable to leave her house. (Tr. 224-5). Dr. Maryman also noted possible dependent personality traits, but concluded that the plaintiff appeared to have the capacity to understand, remember, and carry out simple to somewhat more complicated instructions and tasks, could retain sufficient focus, concentration, and persistence to complete and carry out work assignments within reasonable time frames, should have no problems interacting appropriately with fellow workers and supervisors, and would only be "moderately limited" in her ability to interact with the general public. (Tr. 227). He felt that she should be able to adjust and adapt reasonably well to the stress and pressures associated with a routine work atmosphere, although she would be better suited for a medium to lower stress work environment. (Id.). Dr. Sillers completed a mental residual functional capacity assessment indicating that the plaintiff was "moderately limited" in her ability to maintain attention and concentration for extended periods and to interact appropriately with the general public. (Tr. 69).

 The ALJ's hypothetical question followed Dr. Maryman in suggesting a limitation in withstanding work stresses (Tr. 346) and, since Dr. Sillers was a non-examining source, the ALJ could reasonably have relied on Dr. Maryman, the

5

examiner.

Although the plaintiff argues that she is entitled to a continuing presumption of disability, this is no longer the case. Rather, the "decision whether to terminate benefits must be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. Section 423(f), quoted in Cutlip v. Secretary of Health and Human Services, 25 F.3d 284, 286 (6th Cir. 1994) (internal quotation marks omitted). The plaintiff additionally argues that the evidence did not show medical improvement related to her ability to perform work activities as outlined in 20 C.F.R. Section 416.994, but the evidence is to the contrary.

A physical examination by Dr. Shantae Lucas in January, 1995 showed that the plaintiff was morbidly obese, weighing 276 pounds at a height of 65 inches, but that she had a normal gait, was comfortable sitting and supine, had a normal funduscopic examination, was able to bend forward 90 degrees at the waist and squat without difficulty, and had a normal neurological examination. (Tr. 188-9). She had normal pulmonary function test results. (Tr. 195). The physician's impression was of morbid obesity and a "history of" asthma, hypertension, and depression. (Tr. 189). The consultant opined that the plaintiff's tolerance for standing, walking, stooping, bending, lifting, sitting, and traveling was diminished to an unspecified degree. (Tr. 190). A state agency reviewing physician in 1995

Kennedy

determined that the plaintiff was capable of "light" level exertion, with the ability to stand in walk at least two hours in an eight-hour day and "occasionally" perform all postural activities. (Tr. 58-61). As the ALJ noted, the findings of Dr. Hernandez that the plaintiff did not have a "severe" physical impairment and, thus, no physical limitations, in 2003 represents evidence of improvement.

The plaintiff contends that her weight of 276 pounds at the time of the 1995 consultative examination was not significantly different from her recent weight of approximately 250 pounds in Dr. Roberts's 2004 office notes (Tr. 309-12, 319), and was less than the 299 pounds recorded in April, 2003, the point at which her physical condition had been found to improve (Tr. 236). She argues that Social Security Ruling (SSR) 02-1p provides that a sustained weight loss of 10 percent or more is required to show medical improvement. However, this Listing refers to individuals found to be disabled under the former obesity listing at 20 C.F.R. part 404, Subpart P, App. 1, Section 9.09 (LOI Section 9.09), and, as the Commissioner points out, there is no evidence that the plaintiff was ever found to have met the Listing. While the plaintiff would have met the weight prong of LOI Section 9.09, there is no evidence that she met any of the additional criteria which were then required, such as pain and limitation of motion in a weight-bearing joint or in the lumbosacral spine, diastolic blood pressure persistently in excess of 100 mm of mercury, a history of congestive heart failure, chronic venous insufficiency, or

7

Kennedy

respiratory disease.[2] Therefore, this argument is without merit.

The Court concludes that substantial evidence supports the administrative determination, which will be affirmed.

This the _20_ day of October, 2006.

                                             G. WIX UNTHANK
                                             SENIOR JUDGE

---

[2]SSR 02-1p does provide that for current evaluations, there is no specific level of weight equating with a "severe" impairment, and descriptive terms for levels of obesity, such as the "morbid obesity" found by Dr. Lucas in 1995, also do not establish severity; instead, the Commissioner will perform "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe." SSR 02-1p, Question 6. However, despite the previously-noted finding by Dr. Hernandez that the plaintiff currently had no physical condition that was a "severe" impairment, the ALJ did find that her obesity was "severe." (Tr. 19). Question 8 of 02-1p provides that obesity should be considered in assessing residual functional capacity, but a review of the ALJ's decision shows that the plaintiff's daily activities and medical treatment were extensively considered in the ALJ's decision. (Tr. 18-19, 21-3).